514 So.2d 1240 (1987)
James H. MARTER
v.
Beverly T. SCOTT and Pepsi-Cola, Inc.
No. 56751.
Supreme Court of Mississippi.
November 4, 1987.
*1241 Preston Davis Rideout, Jr., Fraiser Burgoon & Abraham, Greenwood, for appellant.
Philip B. Terney, Susan D. Fahey, Robertshaw, Terney & Noble, Greenville, for appellees.
En Banc.
HAWKINS, Presiding Justice, for the Court on Part I.
ROY NOBLE LEE, Chief Justice, for the Court on Part II.

PART I.
James H. Marter has appealed from a summary judgment in favor of a Pepsi-Cola, Inc., bottling plant in the circuit court of Grenada County finding that a driver of a car searching for a mechanic to assist a disabled Pepsi truck and its driver stranded on the highway was not an agent of the bottler.
We find there was no issue of fact on this question and affirm.

FACTS
Pepsi-Cola, Inc., the defendant in this case, is a local bottling plant corporation domiciled and with principal offices in Senatobia, Tate County. On July 1, 1983, Beverly T. Scott and Warren Brown were both employed by the defendant, she as a secretary-receptionist, and he as truck driver. They were personally acquainted and friends. On that day Scott, who lived in Hernando, was on her vacation driving her own automobile south on Highway 55, a four-lane interstate highway, when she observed a Pepsi-Cola truck stopped on the right shoulder. As she drove past the truck she recognized Brown. Scott continued approximately a mile to the Coldwater exit, where, because she knew Brown, she got off the highway, turned around and headed north to the truck to offer assistance.
When she got even with the truck, she parked her car on the left shoulder, crossed the median and asked Brown if he would like a ride to the plant. Brown told her, no, asked her if she would get in touch with a mechanic. Scott returned to her car and set off to get a mechanic.
While looking for the first place in which she could turn around and head south again, and about three miles south of Hernando she noticed a place where vehicles could cross the median. There was a sign, however (which she did not notice at the time), which prohibited cars from crossing the median.
Scott pulled over onto the left lane and was proceeding onto the shoulder in order to cross the median. There was great deal of traffic headed north on this day, and some cars braked suddenly behind her. Behind these the plaintiff Marter was driving an eighteen-wheel International truck and trailer. In order to avoid a collision with the suddenly braking cars just ahead, he pulled off onto the shoulder and struck Scott's automobile. Scott was not injured, but Marter suffered personal injuries in the accident.
On January 21, 1985, Marter filed suit in the circuit court of Grenada County naming Scott and Pepsi-Cola, Inc., as defendants. As one of its defenses, Pepsi-Cola, Inc., denied Scott was an agent and employee acting within the scope of her employment at the time of the accident.
Following the taking of depositions in which the facts as above related were developed, Pepsi-Cola, Inc., moved for summary judgment, which was sustained by the circuit judge.
An order dismissing the case with prejudice against Pepsi-Cola, Inc., was entered by the circuit judge on July 19, 1985.
Following this, on August 5, 1985, a stipulation of dismissal without prejudice was entered regarding Scott pursuant to Rule 41(a)(1)(ii) of the Mississippi Rules of Civil Procedure.
Marter has appealed from the order dismissing the case with prejudice as against Pepsi-Cola, Inc.

PART II.
Appellant assigns only one error in the trial below, i.e., Beverly T. Scott was an *1242 "emergency employee" of Pepsi-Cola, Inc., acting within the course and scope of her employment at the time of her collision with the appellant and the lower court erred in granting the summary judgment motion of Pepsi-Cola, Inc.
At page 2 of the appellant's brief, he states that the only issue on this appeal is whether Beverly T. Scott at the time of the motor vehicle collision with plaintiff was an emergency employee of Pepsi-Cola, Inc.
Paragraph (6) of the complaint charges that Beverly T. Scott was the agent of Pepsi-Cola, Inc. as follows:
At and about the date and place first mentioned above in paragraph 5, the Defendant, Beverly T. Scott, was the agent, servant, or employee of Defendant Pepsi-Cola, Inc. and was acting within the course and scope of her employment.
The sole issue presented to the trial court in Pepsi-Cola's motion for summary judgment is whether Scott was acting within the scope and course of her employment with Pepsi-Cola at the time of the accident, and, in addition, whether Pepsi-Cola employee Warren Brown had the authority, either actual or apparent, to request Scott to contact a mechanic for the disabled truck, so as to bind Pepsi-Cola by Scott's actions.
As stated on appeal, the appellant Marter relies upon the emergency employment doctrine. In order to invoke that doctrine, the burden is on the appellant to show that an emergency did exist. Saldukas v. McKerns, 340 Pa. 113, 16 A.2d 30 (1940). The plaintiffs must establish (1) that the situation is created suddenly and unexpectedly, and (2) that the emergency rendered it necessary, in the employer's interest, that the employee have assistance to perform the work the employer has required. Heckman v. Warren, 124 Colo. 497, 238 P.2d 854 (1951); Hall v. O.C. Whitaker Co., 143 Tex. 397, 185 S.W.2d 720 (1945).
Ms. Scott was on a week's vacation from her employer, Pepsi-Cola. She knew Brown well, recognized him when she passed, and turned around to check on him. There was no urgency in the breakdown because the truck was not blocking the freeway, and Brown could have performed the work himself. He had three options: (1) he could have waited for some action to be taken by the warehouse manager; (2) he could have waited for a highway patrolman; or (3) he could have walked the one mile to the Coldwater exit and called the plant. These options may have entailed some inconvenience on the part of Brown, but the mere avoidance of inconvenience will not invoke the doctrine of sudden emergency employment. Hall, 143 Tex. at 403, 185 S.W.2d at 723. Brown's belief that he should remain with the truck is not sufficient to show an emergency. Central Ky. Traction Co. v. Miller, 147 Ky. 110, 143 S.W. 750 (1912) (holding that it is not sufficient to show simply that the employee believed that an emergency existed).
The proper issue in this case, as presented to the lower court, is not whether Scott was an emergency employee, but whether she was acting within the scope of her regular employment with Pepsi-Cola. This Court discussed the question of determination of scope of employment in Sears, Roebuck & Co. v. Creekmore, 199 Miss. 48, 23 So.2d 250 (1945). Therein it was stated that the scope of employment extends to everything "incident to that ultimate purpose which constitutes [the employee's] job," 199 Miss. at 59, 23 So.2d at 252. As authority for the standard, Creekmore cites § 228 Restatement (Second) of Agency (1958). That section provides:
(1) Conduct of a servant is within the scope of employment if, but only if:
(a) it is of the kind he is employed to perform;
(b) it occurs substantially within the authorized time and space limits;
(c) it is actuated, at least in part, by a purpose to serve the master, and
(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or *1243 too little actuated by a purpose to serve the master.
(A) Scott was employed by Pepsi-Cola as a secretary/receptionist. She tabulated the number of hours worked by other employees and the number of beverages sold, and she occasionally made bank deposits and ran errands. Her duties did not require her to locate or report disabled delivery trucks.
(B) At the time of the accident, Scott was enjoying her one-week paid vacation from her job at Pepsi-Cola. She was travelling on Interstate 55 en route to a church-league softball game. Her employment with Pepsi-Cola required Scott to travel Interstate 55 only when going to and coming from work.
(C) Although Scott testified in her deposition that she would have stopped to help her friend regardless of whether he had been in a Pepsi-Cola truck, it can be conceded that Scott's conduct was actuated, at least in part, by a purpose to help her employer. However, this does not of itself constitute her as an employee of Pepsi-Cola at the particular time of the accident.
The facts of this case are undisputed as to the question of agency. Scott was not acting as an emergency employee but merely as a friend volunteering to assist another friend, Brown, in hopes that he might avoid some inconvenience. The question before the lower court, and here, is whether or not, on those undisputed facts a summary judgment was proper.
If under the undisputed facts of this case a jury must determine liability, then in almost every situation where one person asks another to do a simple favor, or deliver a message, etc., liability could be imposed on that person, in the event an accident occurred. That cannot be!
We are of the opinion that there was a question of law, only, for the lower court, where the sudden emergency employment doctrine was not presented, and that the lower court correctly granted the summary judgment. Likewise, we hold that the uncontradicted facts do not support a contention that Ms. Scott is an "emergency employee" and, on that theory, the summary judgment was correctly granted.
Therefore, the judgment of the lower court is affirmed.
AFFIRMED.
As to Part I: ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
As to Part II: DAN M. LEE, P.J., and PRATHER, ROBERTSON, ANDERSON and GRIFFIN, JJ., concur.
As to Part II: HAWKINS, P.J., and SULLIVAN J., dissent.
ZUCCARO, J., not participating.
HAWKINS, Presiding Justice, dissenting:

PART II.

LAW

WAS SUMMARY JUDGMENT PROPER?
Since this state adopted the Mississippi Rules of Civil Procedure, we have had occasion to discuss Rule 56 summary judgments many times. See: Joseph v. Tennessee Partners, Inc., 501 So.2d 371 (Miss. 1987); Modling v. Bailey Homes, Inc., 490 So.2d 887 (Miss. 1986); Cole v. Wiggins, 487 So.2d 203 (Miss. 1986); Brown v. Credit Center, Inc., 444 So.2d 358 (Miss. 1983).
The basic issue is whether Brown, as a servant of Pepsi-Cola, had the authority, either actual or apparent, to request Scott to contact a mechanic for the disabled truck. If Brown had such authority, either actual or apparent, then Scott was likewise a servant of Pepsi-Cola acting within the scope of her employment in driving to get a mechanic. If Brown had no such authority from Pepsi-Cola, either real or apparent, to request her assistance, then Scott was neither an agent nor servant of Pepsi-Cola at the time of the accident. If there is any question on this issue, then summary judgment was improper. Until the majority *1244 spoke in this case, there is absolutely no question but that under current law this case presented a jury issue.
Men and women of the trade and business world are first and foremost practical people. Without practical wisdom in the everyday operation of a business, it cannot survive. This Pepsi-Cola truck, presumably engaged in some delivery, became disabled. It is difficult for this writer to conceive of some business policy against the driver of the truck requesting a sober, responsible person, in this case a fellow employee, who had stopped to offer help, to contact the mechanic.
Of course, requesting such help from a responsible volunteer does run a risk of some possible accident, and possible liability as occurred here. Yet, how many thousands or millions of requests have been made, precisely as Brown requested Scott, with no mishap whatever?
On the other hand, if the driver does nothing, some loss is certain. Counsel for appellee suggested three other choices Brown could have made. Two of these are that he could have sat in the truck and waited for help to come from the plant (i.e., sat there until they missed him), or waited for some highway patrolman to stop. If he followed either of these options, he might have lost valuable hours, perhaps most of the day with consequent delay in carrying out the business of Pepsi-Cola. The other choice suggested is that Brown could have left the truck and walked to the Coldwater exit and telephoned the plant. This again would create a protracted delay, as well as leaving a truck unattended on a busy highway with all those tangy canned or bottled Pepsi treasures available gratis to any marauding passerby. Incredibly to me, these asinity with a fewer alternatives suggested by counsel for Pepsi-Cola have beguiled the majority.
In attempting to further Pepsi-Cola's business, Brown could hardly have acted any more sensibly or prudently than he did in requesting Scott to contact the mechanic.
He might have been fired for stupidity if he had not requested Scott, when she stopped, to contact a mechanic. And most assuredly, Scott would have been subject to serious reprimand from her boss, if not discharge, if she had callously ignored the plight of Brown, and not returned to offer help.
Businesses are presumably run by men and women of sound practical judgment, and it is the function of the law to accommodate to the needs of men, not the other way around.
A jury could have good reason to conclude that Brown was furthering his employer's business when he requested Scott to contact the mechanic, and also find that he was acting at least within the apparent scope of his employment.
The law is well settled in this state that a master is liable for acts of a servant in the furtherance of his employer's business, and within the real or apparent scope of his employment. See: Odier v. Sumrall, 353 So.2d 1370 (Miss. 1978); Tarver v. J.W. Sanders Cotton Mill, 187 Mill. 111, 192 So. 17 (1930); Alden Mills v. Pendergraft, 149 Miss. 595, 115 So. 713 (Miss. 1928). From the evidence in this case at the very least Marter was entitled to have a jury pass upon the question of whether Brown was acting within the scope of his authority, real or apparent, in requesting Scott to contact the mechanic.
See: Alabama Great Southern R. Co. v. Alsup, 101 F.2d 175 (D.Miss. 1939); Parker v. Film Transit Co., 194 Miss. 542, 13 So.2d 159 (1943); Great A. & P. Tea Co. v. Compton, 164 Miss. 553, 145 So. 105 (1933).
In the case of McGhee v. Kingman & Everett, Inc., 49 Ga. App. 767, 176 S.E. 55 (1934), the driver of a disabled truck with a flat tire sought assistance, and when a passerby rendered aid there was an accident. The Georgia Court of Appeals stated:
Thus, where a servant is employed to take and deliver goods of the master in its truck to customers in another city, and after their delivery to return the truck to the master's place of business, and while they are thus en route, a blow-out of a heavy tire occurs, rendering its *1245 repair or change to another tire necessary, the servant, in the absence of contrary instructions, is authorized to do all things essential to the conduct of such business for the master; and this includes the right so far as reasonably necessary, to obtain the assistance of another in the furnishing of needful light for the work of changing the tire, when the blow-out occurs at night.
Except in plain and palpable cases, it would be for the jury to decide whether such a servant was acting within the scope of and in furtherance of his employment... .
Id. 176 S.E. at 59.
In Alabama Great Southern R. Co. v. Alsup, supra, railroad employee Sims in Meridian motioned for two men to help him unload the plaintiff, a passenger on the train who was disabled from a previous injury, from the baggage car onto a baggage truck and thence to an automobile. In doing so one of these helpers injured the plaintiff. The court of appeals held: "The men who assisted him [Sims] in removing Alsup [the plaintiff] from the baggage car must be considered as acting for the railroad and not as his personal servants. 101 F.2d at 177.
Lambert v. Paul W. Senne Funeral Home, 343 Ill. App. 136, 98 N.E.2d 519 (1951), held that it was a jury question whether an employee of the funeral home had the authority to request a patron assist him in checking on an air conditioner leaking through the ceiling. The patron was injured while doing so. The court of appeals of Illinois reached this conclusion even though the employee had just previous to requesting assistance telephoned the owner who lived close by and informed him of the leak, who told the employee to go into the attic and mop it up.
Hollidge v. Duncan, 199 Mass. 121, 85 N.E. 186 (1908), held a jury issue was presented on whether a third party helping the driver of a disabled horse drawn cart was an agent of the owner, when a bystander was injured by the swinging cart tongue.
In Booth & Flynn v. Price, 183 Ark. 975, 39 S.W.2d 717 (1931), the Supreme Court of Arkansas stated: "[Whether] circumstances constitute an emergency authorizing an employee to procure temporary assistance, so as to entitle the assistant to the same measure of protection as other employees, is generally a jury question." Id. 39 S.W.2d at 720.
Restatement of Agency, 2d Ed., § 79, states in pertinent part:
§ 79 When Authority to Appoint an Agent is Inferred.
Unless otherwise agreed an agent is authorized to appoint another agent for the principal if:
* * * * * *
(d) unforeseen contingency arises making it impracticable to communicate with the principal and making such an appointment reasonably necessary for the protection of the interests of the principal entrusted to the agent. See also: Bryant v. Rushing [121 Ga. App. 430], 174 S.E.2d 226 (Ga.Ct.App. 1970); O'Shea v. Pacific Gas & Electric Co [18 Cal. App.2d 32], 62 P.2d 1066 (Cal.Ct.App. 1936).

THE MAJORITY VIEW
In deference the majority's citation of authority does not appear to strengthen its position.
Heckman v. Warren, 124 Colo. 497, 238 P.2d 854 (1951), allowed recovery for injury caused a person assisting an employee put out fire, and made the following statements:
The prevailing rule is:
"* * * that an employee who is confronted with an unforeseen situation which constitutes an emergency, which rendered it necessary, in his employer's interest, that the employee have temporary assistance, is to be deemed to have had implied authority to procure necessary help and thus create between the employer and the emergency assistant the relationship of master and servant, which will engage responsibility on the part of the employer to the assistant for injuries chargeable to the neglect of the employer. * * *" 35 Am.Jur., p. 592, § 164.

*1246 "It is the emergency that gives rise to the implied authority; and if it does not in fact exist, then neither does the implication of authority arise. In order to support a finding that an emergency existed, the evidence must show that the situation was created suddenly and unexpectedly. * * * It has however, been held that the bare fact that it is possible to proceed without the services of the person employed does not in itself determine that there is no necessity for the employment. However this may be in order to support a recovery, it is not sufficient to show simply that the assistant believed that an emergency existed.
"The question whether the circumstances of any particular case constituted what might be deemed to have been an `emergency' is generally one for the jury's determination." 35 Am.Jur., p. 594, § 165. [Emphasis added]
124 Colo. at 505-506, 238 P.2d at 858-859.
In Hall v. O.C. Whitaker, 143 Tex. 397, 185 S.W.2d 720 (1945), a work crew was laying a pipe line, and because of the cold weather a machine on the job site became inoperable. An employee asked a former employee, who happened to be at the site, to carry two other employees back to their residences in Beaumont. There was other transportation available and other personnel who could have transported them. The Texas Supreme Court held there was no emergency here, and other transportation was available and therefore the driver was not an agent of the company. Even in this case, however, upon a petition for rehearing the case was remanded for a further development of the facts.
Saldukas v. McKerns, 340 Pa. 113, 16 A.2d 30 (1940), involved a third party helping an employee get a truck started by priming the carburetor. The court held this third party was not an agent because there were fellow employees available to assist in getting the truck started, reasoning that if fellow servants are available to do the same thing, there can be no emergency.
Central Kentucky Traction Co. v. Miller, 147 Ky. 110, 143 S.W. 750 (1912), held there was a jury issue on whether an emergency existed when the motorman asked another employee to take over operation of a train.
This concludes the majority's citation of authority on Brown's apparent authority.
Remarkably, the majority does not even stop after telling us Brown had no apparent authority as a matter of law to request his fellow employee to call a mechanic. Under the majority's expanded holding, Scott was not the servant of Pepsi-Cola that day in driving her car to call a mechanic, no matter who asked her. It simply was not the sort of service that creates an agency relationship. The majority informs us that if a jury issue were made on Scott's assistance, "... then in almost every situation where one person asks another to do a simple favor, or deliver a message, etc., liability could be imposed on that person in the event an accident occurred. That cannot be!" Thus, I take it if the president, accompanied by the board of directors of Pepsi-Cola, had requested Scott to drive her car and notify a mechanic, she still would not have been agent of Pepsi. This would only have been a "simple favor." Contra: Restatement, Law of Agency, 2nd Ed., §§ 221, 225.
Was Scott a servant of her employer Pepsi-Cola that afternoon acting within the scope of her employment when she interrupted her vacation to render this assistance to her fellow employee and their mutual employer? The majority tells us no way. I take it then that when her car was struck by the eighteen wheeler, if she had been the one injured instead of poor Marter, indeed if she had been rendered a paraplegic, workmen's compensation benefits from the employer-carrier would have been out of the question. Mills v. Jones, 213 Miss. 680, 56 So.2d 488 (1952).
In my view the summary judgment was improper, and I would reverse.
SULLIVAN, J., joins this opinion.