## 50185. ZANAC, INC. v. FRAZIER NEON SIGNS, INC.

MARSHALL, Judge.

The main issue in this appeal is whether Zanac's agent had authority to bind it to a contract for repairs of a sign at Zanac's restaurant.

Frazier brought his action on account, and on quantum meruit against Zanac, Inc., and its employee, Robert Spears, and Zanac's restaurant, Seven Steers, at which Spears worked. Spears was not served and did not appear as a witness.

Following a trial without a jury, the trial court entered the following findings of fact and conclusions of law:

### Findings of Fact.

"The plaintiff furnished merchandise and services to defendant Zanac, Inc. as set forth on plaintiff's invoice no. 2760, dated October 20, 1970, and attached to the complaint as Exhibit 'A,' the same being repair of neon sign at Seven Steers Restaurant, 691 Peachtree Street, Atlanta, Georgia. Said services and merchandise were furnished by plaintiff pursuant to the request of Robert Spears, an employee of defendant corporation, and Assistant Manager of the restaurant at 691 Peachtree Street. Said Spears had the authority, according to the testimony of defendant's president, Louis Zakas, to take deliveries of merchandise, hire and fire waitresses, bus boys and other employees and to do other things that had

to be done. Additionally, Spears was expressly authorized by Zakas to take a bid from plaintiff for the job.

Conclusions of Law.

"The court finds that defendant's employee, Robert Spears, had the authority to contract for the merchandise and services performed by plaintiff and that the acts of said Spears were within the scope of his authority."

These facts are not disputed by the parties and are supported by the record. Zanac contends that the invoice was inadmissible under Code § 38-310 and that the evidence did not support the trial court's conclusion of law that Spears had agency authority to make the contract for repairs. *Held:*

1. The invoice admitted into evidence as P-1 was identified by the president of Frazier as being the bill for services sent to Zanac. This witness also testified that the invoice was made in the regular course of business, that it was the regular course of business to make such invoice, and that it was made near the time of the service rendered. This foundation tracks the requirements of Ga. L. 1952, p. 177 (Code Ann. § 38-711) and makes the invoice admissible as an exception to the hearsay rule. See, e.g., *Daniel v. Dixie Plumbing Supply Co.,* 112 Ga. App. 427 (2) (145 SE2d 796); *Crooke v. Elliott,* 96 Ga. App. 314 (1) (99 SE2d 842). Code § 38-310 is no longer applicable to this type of evidence in spite of appellant's plea to revive it. See 11 EGL 366, 367, Evidence, §§ 122, 123; Green, Georgia Law of Evidence, pp. 613, 619, §§ 312, 313 (1957). That the witness could not testify from his own personal knowledge that the cost of the items reflected on the invoice was the actual cost at the time the invoice was made, goes to the weight to be given the document, not to its admissibility. Code Ann. § 38-711.

2. There is no question that Spears was the agent of Zanac; the question is whether there is sufficient evidence to show that this agent had authority to bind his principal, Zanac, to the contract with Frazier. Zanac's president stated he gave authority to Spears "to price out the job" but denied ever giving any of his employees, including Spears, authority "to spend my money." Frazier's president testified: "Mr. Spears asked me to come and give him a price on repairing the sign. And I sent

my truck crew of men out there and came up with a number of bad transformers and broken and burned out neons. And I told Mr. Spears that I couldn't give him a price, a total price to repair the sign, but I would repair it for so much for each unit of glass, and so much for each transformer I had to install in the sign. And he said, well, he'll have to clear that with Mr. Zakas [the president of Zanac]. And he let me, he would let me know. So, three days later, he called me back and said, 'Mr. Zakas said it was all right. Go ahead and prepare the sign.' "

Code § 4-301 provides: "The agent's authority shall be construed to include all necessary and usual means for effectually executing it. Private instructions or limitations not known to persons dealing with a general agent shall not affect them." We are not dealing with apparent authority in this case, since Zanac at no time manifested to Frazier that Spears was authorized to contract for the services rendered. See Restatement 2d, Agency, p. 30, § 8 (1958). Nor may Spears' authority to contract be inferred from his authority to solicit bids for the job. See Restatement 2d, Agency, p. 151, § 50 (1958); *Johnson v. American Freehold &c.,* 111 Ga. 490 (1) (36 SE 614). And it is questionable whether Spears' authority as an "assistant manager" included authority to "make contracts which are incidental to such business . . . or are reasonably necessary in conducting it," or to make reasonable repairs, since Zanac's president stated that he specifically forbade such an expenditure unless it was an emergency. See Restatement 2d, Agency, § 73 (a) & (b) (1958). See also *Pickens Co. v. Thomas,* 152 Ga. 643 (1) (111 SE 27); *Hargrove v. Armour Fertilizer Works,* 31 Ga. App. 465 (120 SE 800).

Nevertheless, even without express, apparent or inferred authority, Spears, as the general agent for a partially disclosed principal, may bind the principal under his inherent agency powers. See Restatement 2d, Agency, pp. 36, 378, §§ 8A, 161. The latter section states: "A general agent for a disclosed or partially disclosed principal subjects his principal to liability for acts done on his account which usually accompany or are incidental to transactions which the agent is authorized to conduct if, although they are forbidden by the principal, the other

party reasonably believes that the agent is authorized to do them and has no notice that he is not so authorized." Accord, Code § 4-301, supra. See generally, *Bass &c. Co. v. Granite City &c. Co.,* 119 Ga. 124 (45 SE 980); *Foster & Ackerman v. Jones,* 78 Ga. 150 (1 SE 275); *City of Gainesville v. Pritchett,* 129 Ga. App. 475 (3) (199 SE2d 889); *Davenport v. So. Atlantic Gas Co.,* 106 Ga. App. 45 (3) (126 SE2d 480); *Rawleigh Co. v. Royal,* 30 Ga. App. 706 (4) (119 SE 339); *Martin & Hicks v. Bridges &c. Co.,* 18 Ga. App. 24 (88 SE 747); Georgia Cotton Oil Co. v. Carlisle Seed Co., 75 S 984 (Ala., 1917). In these cases, and in others, Georgia courts have used the terms "apparent," "incidental," "implied" and "inferred" authority, interchangeably, without regard to their distinctions as noted in the Restatement 2d. Because of these vagaries, it is difficult to formulate a general rule governing authority of a general agent to make contracts (see 1 EGL 607, Agency, § 36 (1960)), except to say that Georgia statute and case law appear to be in a accord with the Restatement, § 161, quoted above. In the present case we find there is sufficient evidence to support the trial court's conclusion that Spears had authority to enter into the contract and that same is binding on Zanac.

*Judgment affirmed. Bell, C. J., and Webb, J., concur.*

ARGUED FEBRUARY 3, 1975 — DECIDED APRIL 8, 1975.

*Nick G. Lambros,* for appellant.
*Cotton, Katz & White, Gerald H. White,* for appellee.